UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARAMARK MANAGEMENT )
SERVICES LIMITED PARTNERSHIP, )
an Illinois limited partnership, )
)
Plaintiff, )
) No. 04 C 4692
v. )
) Judge John W. Darrah
SERVICEMASTER BY WALLACE, INC., )
an Ohio Corporation; KIRK CLORE; )
JOANNE WARZYNSKI; and JAMES SHUTT, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aramark Management Services Limited Partnership, filed suit against the Defendants, ServiceMaster by Wallace, Inc. ("Wallace"), Kirk Clore, Joanne Warzynski, and James Shutt. Plaintiff, *inter alia*, has brought a claim against Wallace for a breach of contract and claims against the individual Defendants for breach of contract. Before the Court is the Defendants' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

## LEGAL STANDARD

Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *See Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When determining whether the plaintiff has met this burden, jurisdictional allegations in the complaint are taken as true, unless controverted by the defendant's affidavits or exhibits. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (*Turnock*). The remaining facts come from the declarations and exhibits submitted by the parties, and a court can look to affidavits and exhibits submitted by each party.

*Turnock*, 816 F.2d at 333. All factual disputes must be resolved in favor of the plaintiff. *Turnock*, 816 F.2d at 333.

In diversity actions, a federal court has personal jurisdiction over a non-resident defendant only if a court of the state in which the federal court sits would have personal jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992) (citation omitted). A determination of whether an Illinois court would have jurisdiction requires an examination of three sources of law: "(1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*).

Under Illinois law, a court obtains personal jurisdiction over a non-resident via the state's long-arm statute. 735 ILCS § 5/2-209. The statute provides that an Illinois court may exercise jurisdiction on any basis permitted by the state or federal constitution. 735 ILCS § 5/2-209(c). Therefore, the statute authorizes the exercise of personal jurisdiction to the fullest constitutional limit; and the statutory analysis collapses into a two-prong analysis: one based on the Illinois Constitution and one based on the United States Constitution. *RAR*, 107 F.3d. at 1276.

"Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *RAR*, 107 F.3d at 1276. The Due Process Clause of the United States Constitution permits an Illinois court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Neuman & Assoc. v. Florabelle Flowers*, 15 F.3d 721, 725 (7th Cir. 1994). This determination depends on whether the plaintiff asserts specific jurisdiction against the defendant. *RAR*, 107 F.3d at 1277.

Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *RAR*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 486 U.S. 408 (1984)). To determine whether specific jurisdiction exists, a defendant must have "purposefully established minimum contacts within [Illinois]"; and those contacts must make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Defendant must have "purposely availed" itself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws such that they would "reasonably anticipate being haled into court there." *Asahi-Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 119 (1987).

Plaintiff must satisfy two elements for specific jurisdiction: (1) the plaintiff must show that the defendant is amenable to service of process and (2) the plaintiff must establish that haling the defendant into court is consistent with the Fourteenth Amendment's due process clause. *LFG, LLC. v. Zapata Corp.*, 78 F.Supp.2d 731, 734 (N.D. Ill. 1999). However, a potential defendant can waive objections to the exercise of personal jurisdiction by signing a forum selection clause before the suit, unless the clause is unreasonable and unjust. *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (*Northwestern*).

## BACKGROUND

The facts, for the purposes of this motion, are as follows. Plaintiff has its headquarters in Illinois. Clore is an Indiana resident, Warzynski is a South Carolina resident, Shutt is an Ohio resident, and Wallace is an Ohio corporation with its principal place of business in Ohio.

Plaintiff is a Delaware limited partnership whose partners are citizens of Pennsylvania. Plaintiff was formerly known as ServiceMaster Management Services Limited Partnership and changed its name to Aramark Management Services Limited Partnership after the Aramark Corporation, through its wholly-owned subsidiary, acquired the entire ownership interest of Service Master Management Services Limited Partnership. Specifically, Aramark purchased both the limited partner and general partner of ServiceMaster Management Services Limited Partnership.

Clore, Warzynski, and Shutt signed an employment contract with Plaintiff. Clore, Warzynski, and Shutt agreed that, during their employment and eighteen months thereafter, they would not take employment with any other entity which competes with Plaintiff. Subsequently, Clore, Warzynski, and Shutt's employment ended.

Clore was responsible for managing operations at numerous client sites for Plaintiff, including sites in Illinois. Clore received administrative and technical support and housed his legal files at Plaintiff's Illinois headquarters. Clore worked out of the headquarters approximately one day a month and visited the headquarters approximately two to three times a year for regional meetings and training programs. These meetings and programs would typically last about one to three days. Moreover, Clore received his paycheck and employee benefits through headquarters.

When Plaintiff initially hired Warzynski, she was living and working in Illinois. Warzynski, moreover, signed her employment contract while living in Illinois. After Warzynski left Illinois, she conducted her corporate dealings, including payroll, human resources, and customer services support, through the headquarters. Approximately twice a year, Warzynski visited for regional meetings and training programs. These meetings and programs would typically last about one to three days.

Wallace obtained a service contracts for a facility in Indiana; and Wallace and Plaintiff then entered into a subcontract, whereby Plaintiff would provide certain employees to Wallace. The contract also provided that Wallace would not, during the term of the agreement and two years thereafter, seek to hire any of Plaintiff's employees.

Thereafter, Wallace and the ServiceMaster Management Services Limited Partnership entered into an additional "Master Agreement," whereby the parties agreed on terms and conditions that would govern the parties' relationship at the Indiana facility, as well as any other future subcontracts. The Master Agreement provided that, during the term of the agreement and one year thereafter, Wallace would not seek to hire any ServiceMaster Management Services Limited Partnership employees without receiving ServiceMaster Management Services Limit Partnership prior consent. The Master Agreement provided that it would run for approximately five years and prohibited assignment of the agreement without prior consent. Subsequently, Wallace entered into two subcontracts for facilities in Ohio and Indiana. These subcontracts incorporated the terms of the Master Agreement. One of these subcontracts was entered into after the Aramark Corporation purchased the ServiceMaster Management Services Limited Partnership.

The Master Agreement further provided that:

> This Agreement and all Subcontracts shall be governed by the laws of the State of Illinois, and any legal actions between or among the Parties to this Agreement shall be instituted and maintained in the Circuit Court of DuPage County, Illinois, to which jurisdiction the Parties submit voluntarily as the exclusive forum and venue for all disputes arising under this Agreement and all Subcontracts.

Wallace then breached his contract with Plaintiff by, among other things, failing to make the required contractual payments. Wallace also hired Clore, Warzynski, and Shutt in violation of the non-compete clauses in their respective Employment Agreements and Wallace's obligations in the Master Agreement.

## ANALYSIS

Defendants seeks to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and venue. Specifically, Wallace argues that the forum selection clause in the Master Agreement is not applicable because: (1) the forum selection clause is unreasonable and unjust, (2) the forum selection clause cannot apply to the claims other than the breach of contract claim, (3) Plaintiff waived enforcement of the forum selection clause, and (4) Plaintiff lacks standing to assert the forum selection clause. The remaining Defendants, Clore, Warzynski, and Shutt, also argue that they do not have sufficient minimum contacts with Illinois to establish personal jurisdiction and that venue is not proper in the Northern District of Illinois because the claims do not arise in this district.

*Forum Selection Clause*

Wallace first contends that the forum selection clause is unreasonable and unjust and argues that a six-factor test is applicable. *Joy v. Hay Group, Inc.*, No. 02 C 4989, 2003 WL 22118930, at * 6 (N.D. Ill. Sept. 11, 2003) (citing *Clinton v. Janger*, 583 F. Supp. 284, 288 (N.D.

Ill. 1984). However, the Seventh Circuit has stated that a forum selection clause is

> presumptively valid and enforceable unless (1) its incorporation into the contract was the result of fraud, undue influence, or [overwhelming] bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) its enforcement would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (alterations and citations omitted). A party seeking to prevent the enforcement of the forum selection clause because of inconvenience carries a "heavy burden of proof." *See Eisenmann Corp. v. Tek-Mor, Inc.*, No. 03 C 4375, 2004 WL 547253, at *2 (N.D. Ill. Feb. 5, 2004) (*Eisenmann Corp.*).

Here, Wallace argues that the forum selection clause is unreasonable and unjust because Wallace is an out-of-state defendant of limited means. It cannot be said, though, that any difficulty Wallace will encounter in defending this suit in this regard would deprive Wallace of its day in court; and some additional expense alone is not a sufficient basis to support this conclusion. *Eisenmann Corp.*, 2004 WL 547253, at *2.

Wallace also contends that the forum selection clause was included in the Master Agreement because of ServiceMaster's overwhelming bargaining power. However, non-negotiable forum selection clauses have been held to be enforceable. *Chapman v. Norwegian Cruise Lines, Ltd.*, No. 01 C 50004, 2001 WL 910102, at *2 (N.D. Ill. July 6, 2001). Moreover, non-negotiable forum selection clauses may be upheld when they would result in cost savings for the parties and prevent confusion as to where the matter should be litigated. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). Here, the Master Agreement covered multiple

7

subcontracts involving multiple states; and the resultant cost-savings to Plaintiff, by avoiding litigation in multiple states, may also benefit the contracting parties. Therefore, the forum selection clause is found to be valid and enforceable.

Wallace further asserts that the forum selection clause only applies to the breach of contract claims and not the other claims in the Complaint. Wallace argues that "[c]ourts have uniformly held that regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action . . . ." *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989) (*Advent Elecs*). However, in that case, the forum selection clause only covered litigation under that particular agreement. *Advent Elecs*, 709 F. Supp. at 845. Here, the forum selection clause expressly provides that "**any legal actions** between or among the Parties to" the Master Agreement are to be brought in Illinois (emphasis added). Therefore, the forum selection clause is sufficiently broad to include all the claims asserted by Plaintiff against Wallace.

*Standing*

Wallace argues that Plaintiff waived enforcement of the clause by bringing the action in Federal Court, as opposed to DuPage County, Illinois. This argument, though, is first asserted in Defendants' reply brief; Plaintiff was not afforded an opportunity to respond and is, therefore, not properly before the Court and will not be considered.

Wallace next contends that Plaintiff lacks standing to assert the agreements at issue. Plaintiff has the burden to demonstrate that standing exists by "more than unadorned speculation." *Wilson v. City of Chicago*, No. 01 C 861, 2003 WL 168640, at *3 (N.D. Ill. Jan. 23, 2003) (citing *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001)).

According to Wallace, the Aramark Corporation acquired the rights to the ServiceMaster Management Services Limited Partnership, then assigned those rights – including the rights in the Master Agreement – to one of its entities. Wallace provides Illinois corporate records and an Aramark Corporation press release and claims these documents demonstrate that the entity who has standing to assert the agreements at issue is not Plaintiff.

However, the Illinois corporate records in Wallace's Exhibit Seven do not demonstrate any specific changes in the ownership of ServiceMaster Management Services Limited Partnership; rather, that exhibit simply lists a number of ServiceMaster and Aramark entities. Nor does the press release cited by Wallace in Exhibit Eight specifically discuss ServiceMaster Management Services Limited Partnership. The only competent evidence in this regard has been presented in an affidavit by Plaintiff's Chief Financial Officer.

Wallace also contends, for the first time in its reply, that changes to a general partner constitutes a dissolution of a limited partnership. However, as discussed above, Plaintiff was not afforded an opportunity to respond to this argument, and it will not be considered.

Wallace lastly argues that a change in ownership of the general partner of the ServiceMaster Management Services Limited Partnership triggers an anti-assignment provision in the Master Agreement, which prohibited assignment of the agreement without prior consent of the other party. *In re Asian Yard Partners*, Nos. 95-333, 95-334, 1995 Bankr. LEXIS 2199 (Bankr. Del. Sept. 18, 1995). Wallace, though, effectively waived the anti-assignment provision of the Master Agreement by signing a subcontract and continuing to deal with Plaintiff after

9

Aramark purchased the ServiceMaster entity. *See Prevue Pet Prods. v. Targeted Media for Medicine*, No. 02 C 6750, 2003 WL 22247182, at *3 (N.D. Ill. Sept. 29, 2003). Wallace presents no arguments to the contrary.

Based on the above, personal jurisdiction is proper over Wallace in Illinois.

*Minimum Contacts*

Clore, Warzynski, and Shutt contend that: (1) they do not have sufficient contacts with Illinois and (2) any contacts they have with Illinois are related to the claims Plaintiff is asserting.

Clore and Warzynski, though, have sufficient contacts with Illinois. Significantly, Clore managed client sites in Illinois for Plaintiff. Clore also received administrative and technical support and maintained his legal files at Plaintiff's headquarters. Clore worked out of the headquarters approximately one day a month and went to the headquarters approximately two to three times a year for regional meetings and training programs that would last one to three days. Clore also received his paycheck and employee benefits through headquarters.

Warzynski was living and working in Illinois when she was initially hired and signed her employment contract. After Warzynski left Illinois, she conducted her corporate dealings, including payroll, human resources, and customer services support, through the headquarters. Approximately twice a year, Warzynski visited for regional meetings and training programs, which would last one to three days.

Plaintiff's claims must also "arise out of" or "be related to" Clore's and Warzynski's contacts with Illinois. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (*Hyatt Int'l*). However, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that

10

makes litigating in the forum state foreseeable to the defendant." *Hyatt Int'l*, 302 F.3d at 316 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Therefore, dealings in regard to a particular contract are relevant to the minimum contacts analysis. *Hyatt Int'l*, 302 F.3d at 317.

Clore and Warzynski contend that the claims asserted by Plaintiff do not relate to their contacts in Illinois because the claims involve actions occurring after their employment relationship ended. However, the claims asserted by Plaintiff involve Clore's and Warzynski's contractual relationships with Plaintiff. Moreover, the contacts with Illinois were in support of those relationships. Therefore, Plaintiff's claims arise out of Clore's and Warzynski's contacts with Illinois.

Based on the above, personal jurisdiction, under a minimum contacts analysis, is proper over Clore and Warzynski in Illinois.

As to Shutt, there are no jurisdictional allegations in the Amended Complaint that would support the exercise of personal jurisdiction over him. Shutt, by leave of court, has adopted the arguments in the motion to dismiss by the other Defendants. However, Plaintiff has not thereafter sought to supplement its response regarding personal jurisdiction over Shutt. Therefore, Shutt's motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint properly alleging jurisdiction against Shutt, if it can do so consistent with its obligations under Federal Rule of Civil Procedure Rule 11, within fourteen days of this order.

*Venue*

Defendants also claim the matter should be dismissed because venue is not proper. Clore and Warzynski only repeat the same arguments in support of their motion to dismiss for lack of

11

personal jurisdiction. Accordingly, Clore and Warzynski's motion to dismiss for lack of venue is denied.

With respect to Wallace, under 28 U.S.C. § 1391(a)(2), venue is proper in any "district in which a substantial part of the events or omissions giving rise to the claim occurred." This test does not require a majority of the pertinent events to have occurred in this district. Instead, only "a substantial portion of the activities giving rise to the claim" must have occurred in this district; this includes the failure to make a contractual payment to a plaintiff residing in a judicial district. *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998). In this case, Wallace is alleged to have failed to make required payments to Plaintiff in this district.

Therefore, venue is proper in the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) is denied with respect to Wallace, Clore, and Warzynski. Shutt's motion to dismiss for lack of personal jurisdiction is granted. Plaintiff is granted leave to file an amended complaint properly alleging jurisdiction against Shutt, if it can do so consistent with its obligations under Federal Rule of Civil Procedure Rule 11 within fourteen days of this order.

Dated: January 24, 2005

JOHN W. DARRAH
United States District Judge