UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ARAMARK MANAGEMENT SERVICES LIMITED PARTNERSHIP, an Illinois limited partnership, | ) ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 04 C 4692 |
| v. | ) ) | Judge John W. Darrah |
| SERVICEMASTER BY WALLACE, INC., an Ohio corporation; KIRK CLORE; JOANNE WARZYNSKI; and JAMES SHUTT, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aramark Management Services Limited Partnership, filed suit against the Defendants, ServiceMaster by Wallace, Inc.; Kirk Clore; Joanne Warzynski; and James Shutt; Clore has since been dismissed from the action. Plaintiff has brought claims for breach of contract, account stated, and tortious interference with contract against ServiceMaster; and has brought claims for breach of contract and tortious interference with contract against Warzynski. Presently before the Court are ServiceMaster's and Warzynski's 12(b)(6) motions to dismiss the Amended Complaint. For the following reasons, those motions are denied.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9 (which are not applicable here). *See Swierkiewicz v. Sorema*, 534 U.S. 506,

511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiff's Amended Complaint. Warzynski was employed by Plaintiff under an employment agreement. The employment agreement provided that:

> Employee agrees that during the term of [her] employment, and for eighteen (18) months thereafter, [she] will not directly or indirectly own, manage, operate, control, serve, be employed by, participate in, or be connected in any manner with any person, enterprise, business or institution which offers or performs management services similar to those performed by [Plaintiff] its parent corporation or a subsidiary of its parent corporation, whether such services are performed on a contract or other basis or whether such services are licensed to be performed by others. The foregoing covenant is limited to being employed by:
>
> 1) A customer of [Plaintiff], its parent corporation, or a subsidiary of its parent corporation, regardless of actual geographic location, which is a customer as of Employee's termination date, or was a customer within the year preceding Employee's termination date, or was a customer which Employee serviced, managed, or solicited while so employed, or
>
> 2) A competitor of [Plaintiff] (i) as a customer of [Plaintiff], its parent corporation or a subsidiary of its parent corporation, regardless of actual geographic location, which is a customer as of Employee's termination date, or was a customer within the year preceding Employee's termination date.

2

> b. Employee also agrees that for a period of eighteen (18) months after termination of this Contract, Employee will not approach, counsel, solicit or attempt to induce any then present Employee of [Plaintiff], or its parent company or subsidiary thereof, to terminate and/or leave such employment.

Clore and Shutt were also Plaintiff's employees who had similar language in their employment contracts.

In a separate arrangement, Defendant ServiceMaster entered into a Management Services Agreement for a Horseshoe Casino, whereby ServiceMaster provided certain maintenance and cleaning services. ServiceMaster then entered into a contract with Plaintiff, the "Horseshoe Subcontract," whereby ServiceMaster would use Plaintiff's employees and a qualified manager at the Horseshoe Casino for a specified invoice amount, usually the wages of the employees and any related administrative costs. The Horseshoe Subcontract also provided that:

> At no time during the term of this Agreement and for a period of two (2) years immediately following the termination of this Agreement, neither Party shall recruit any employees of the other Party for the purpose of employing, hiring, or otherwise interfering with the contractual relationships of such employees with the other Party without the prior written approval of the other Party. No Party shall, directly or indirectly for itself or on behalf of or in connection with any other person, firm, partnership, corporation, association, or facility, solicit, hire, employ, or take away any such employee from the other Party.

Either party could cancel the Horseshoe Subcontract through notice if the other party was in breach of the agreement and did not cure the breach.

Thereafter, Plaintiff and ServiceMaster entered into an additional "Master Agreement" to facilitate similar business and subcontracting opportunities similar to the Horseshoe Subcontract. The parties agreed on training, equipment, and a set compensation level which would be in effect unless stated as otherwise in a particular subcontract. The Master Agreement also provided that:

3

> Each Party Agrees that during the term of this Agreement and for one (1) year thereafter, it will not hire or solicit any person who was an employee of the other Party within the then previous twelve months, either directly or indirectly, without that other Party's prior written consent. The Parties agree that this provision is for the protection of their respective legitimate business interests and is not intended to restrict the employment rights of individuals. If either Party breaches the foregoing covenant, then the offended Party will have the right to apply to a court of competent jurisdiction for an injunction to restrain the offending Party from employing such employee and for an order to enforce the terms of this section so breached, and the offending Party shall be liable for all reasonable attorneys' fees, court costs, and expenses incurred by the offended Party to enforce this covenant. This section will survive the term and termination of this Agreement and all Subcontracts.

Either party could cancel the Master Agreement by giving written notice to the other party so long as no subcontract for a particular facility was still in effect. The Master Agreement further provided that "[t]o the extent that any term or provision contained in this Agreement is inconsistent with any term or provision contained in a Subcontract, the term or provision in the Subcontract will control." ServiceMaster and Plaintiff then entered into other subcontracts incorporating the terms of the Master Agreement, with Plaintiff acting as the subcontractor and ServiceMaster as the primary contractor.

Subsequently, ServiceMaster stopped paying its required invoice amounts and became $600,000.00 in arrears. Plaintiff then provided timely notice to ServiceMaster that it was terminating the contracts because of Plaintiff's breach. After Plaintiff terminated the contracts, ServiceMaster hired Clore, Warzynski, and Shutt, as well as Plaintiff's other employees.

## ANALYSIS

Warzynski seeks to dismiss the breach of contract claim and the tortious interference with contractual relations claim. ServiceMaster seeks to dismiss the breach of contract claim, the account stated claim, and the tortious interference with contractual relations claim.

4

*Warzynski's Motion to Dismiss*

Warzynski argues the breach of contract claim should be dismissed because: (1) it involves a restrictive covenant that is void and unenforceable under Illinois law and (2) the covenant relied upon by Plaintiff has been superceded by the Severance Agreement.

Warzynski argues that the covenant at issue in this case is not reasonable and impermissibly restrictive under Illinois law because it prohibits her from participating in any competitive management service business that performs service for a customer of Plaintiff for eighteen month after Warzynski's employment with Plaintiff ended. However, whether such a restriction is reasonable raises factual issues not appropriate to resolve on a motion to dismiss. *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 923 (N.D. Ill. 2001).

Warzynski also contends that the covenant relied upon by Plaintiff, which prevents Warzynski from seeking certain employment for eighteen months, was superceded by a Severance Agreement entered into between Plaintiff and Warzynski. Warzynski has attached a copy of the Severance Agreement to her reply, but the Severance Agreement is an affirmative factual matter not pled in the Amended Complaint and, therefore, not appropriate to consider on a motion to dismiss.

Warzynski further argues that Plaintiff cannot state a claim for tortious interference with contractual relations because Plaintiff has not alleged anywhere in its Amended Complaint that Warzynski took intentional and unjustified actions which proximately caused ServiceMaster to breach the Master Agreement. Warzynski also contends that Plaintiff – and not ServiceMaster – breached the Master Agreement; thus, because Plaintiff was responsible for the breach of the contract, Warzynski cannot be liable for any tortious interference with the Master Agreement or

the other subcontracts. However, Plaintiff is not required to plead specific facts to support its claim to survive a motion to dismiss; Plaintiff has sufficiently pled ServiceMaster breached the Master Agreement and the Horseshoe Subcontract.

*ServiceMaster's Motion to Dismiss*

ServiceMaster contends the breach of contract claim should be dismissed because: (1) Plaintiff has breached the contract by terminating the agreements at issue and, thus, cannot maintain a claim for breach of contract; (2) the language of the agreements demonstrates that no breach occurred; and (3) the Amended Complaint only contains vague and conclusory allegations about ServiceMaster's alleged failure to pay invoices.

ServiceMaster argues that Plaintiff, not ServiceMaster, breached the Master Agreement by terminating it while subcontracts for services remained in effect and while Plaintiff was under a contractual obligation to perform duties on behalf of ServiceMaster towards its customers; therefore, Plaintiff cannot recover for a breach of contract. *See Ocean Atl. Dev. Corp. v. Willow Tree Farm*, No. 01 C 5014, 2004 WL 526356, at *7-9 (N.D. Ill. Mar. 17, 2004). However, Plaintiff was permitted to terminate the contracts at issue provided it gave notice to ServiceMaster. Plaintiff alleges that it provided timely notice to ServiceMaster. While ServiceMaster argues in its reply that Plaintiff has not explained how ServiceMaster breached the contracts that Plaintiff terminated and has otherwise not explained the facts relating to the breach of contract, Plaintiff is not required to plead with this degree of specificity.

ServiceMaster also contends that, because the subcontract controls in the event of an inconsistency with the Master Agreement, the language of the agreements demonstrates that no breach occurred. Specifically, ServiceMaster argues that: (1) it could hire Plaintiff's former

6

employees under the terms of the Horseshoe Subcontract without violating the inconsistent terms of the Master Agreement, as the subcontract contained no provision restricting ServiceMaster from hiring Plaintiff's former employees; and (2) the customers belonged to ServiceMaster, as the primary contractor, and not Plaintiff, who was actually the subcontractor.

While the Master Agreement on its face forbids ServiceMaster from hiring Plaintiff's former employees for a certain period of time, the Horseshoe Subcontract is silent in this regard and only prohibits ServiceMaster from hiring Plaintiff's current employees. Thus, it cannot be said, for purposes of deciding a motion to dismiss, that the provisions in the Master Agreement are inconsistent with the provisions in the Horseshoe Subcontract. Determining whether such an inconsistency exists is a factual matter not properly resolved in a motion to dismiss. *See Central States, S.E. & S.W. Areas Pension Fund v. Kroger*, 226 F.3d 903, 910 (7th Cir. 2003); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 873 (7th Cir. 1985).

Regarding ServiceMaster's contention that the customers belonged to ServiceMaster, Plaintiff alleges in its Amended Complaint that it was the subcontractor with respect to these customers, consistent with the terms of the Master Agreement. ServiceMaster's contention is unpersuasive.

ServiceMaster next argues that the Amended Complaint only contains vague and conclusory allegations about ServiceMaster's alleged failure to pay invoices. As mentioned above, Plaintiff is not required to plead this element with that degree of specificity.

ServiceMaster further argues that Plaintiff has failed to state a claim for an account stated, as the Amended Complaint does not describe the invoices which form the basis for the claim, any

statement of the account, or any other documentation reflecting an agreement between the parties and balance due under that agreement. Again, Plaintiff is not required to plead the specifics of its account stated claim to withstand a motion to dismiss.

Finally, ServiceMaster argues that Plaintiff has failed to state a claim for tortious interference with a contract because: (1) Plaintiff cannot state a claim involving any contractual relationship for which ServiceMaster was a party; (2) Plaintiff cannot state a claim alleging ServiceMaster induced the individual employees to terminate their employment with Plaintiff; and (3) Plaintiff cannot state a claim involving unenforceable restrictive covenants.

Plaintiff's claim, however, is not based on a contractual relationship with ServiceMaster or that ServiceMaster induced the individual employees to terminate their employment with Plaintiff. Rather, Plaintiff alleges that ServiceMaster interfered with the individual Defendants' contractual obligations not to seek employment with ServiceMaster for a certain time. Further, as discussed above, whether the contractual provisions at issue in this case are unenforceable as impermissible restrictive covenants or contrary to Warzynski's Severance Agreement are factual matters not appropriate to resolve on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, ServiceMaster and Warzynski's Motion to Dismiss is denied.

Date: June 9, 2005

JOHN W. DARRAH, Judge
United States District Court

8